UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA CHENAULT,<br><br>    Plaintiff,<br><br>  v.<br><br>DIANE M. COBB, et al.,<br><br>    Defendants. | Case No.  13-cv-03828-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 54 |

## I.  INTRODUCTION

Pending before the Court is Defendant VanDyk Mortgage Corporation's ("VanDyk") Motion to Dismiss Plaintiff Cynthia Chenault's ("Plaintiff") First Amended Corrected Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Plaintiff has filed an Opposition (Dkt. No. 57) and VanDyk has filed a Reply (Dkt. No. 60).

Having considered the parties' positions, relevant legal authority, and the record in this case, the Court GRANTS VanDyk's Motion for the reasons set forth below.

## II. BACKGROUND

### A. Factual Background

Plaintiff lives in Sand Point, Idaho.  FAC ¶ 1, Dkt. No. 50.  VanDyk is a Michigan corporation that provides mortgage services, with offices in Northern California, as well as in Las Vegas, Nevada.  *Id.* ¶¶ 4, 5.  VanDyk is licensed as a mortgage lender, broker, and originator in California.  *Id.* ¶ 4.  From October 2007 through August 2011, VanDyk employed Defendant Dianne Cobb as a branch manager of VanDyk's Mill Valley and Larkspur offices.  *Id.* Subsequently, from August 2011 until December 31, 2012, Cobb was the branch manager of VanDyk's Las Vegas office.  *Id.*  During this time, Cobb held a California mortgage loan

United States District Court
Northern District of California

…

originator's license.  *Id.*

Cobb also was the co-owner of DM Financial, located in Marin County, California, which she founded with co-defendant Paul Sloane Davis in 1995.  *Id.*  ¶ 11.  Cobb continued to operate DM Financial during her employment with VanDyk.  *Id.* ¶ 10.  DM Financial arranged bridge mortgages to facilitate the relocation of persons from one location to another, usually at the behest of corporate or government employers.  *Id.* ¶ 13.  The funding for these bridge mortgages was provided by investors such as Plaintiff, who alleges that her investments into DM Financial were wrongfully and/or unlawfully converted during the time Cobb was an employee of VanDyk.  *Id.*

Plaintiff alleges that she and/or her husband, Robert Chenault (prior to his death) "made investments comprising a total of no less than $300,000.00 in Marin County, California, and other venues in the United States within the past four years through Cobb, Davis, dba DM Financial, and under the perceived aegis of VanDyk."  *Id.* ¶ 24.  Plaintiff alleges that "the acts of Diane Cobb, an officer and employee of VanDyk, were at all times sourced, performed, perpetuated, and closed by [Cobb] as a direct part of her scope of employment as a branch manager of VanDyk."  *Id.* ¶ 27.  Plaintiff believes that Cobb, "in her branch managerial functions as an employee of [VanDyk], was permitted by the latter to retain the name 'DM Financial' in order to retain her clientele and develop new, private second mortgage sources."  *Id.* ¶ 52.

Plaintiff alleges that VanDyk, "as a state and [f]ederally regulated mortgage lending company owed a statutory duty of care to its customers and to the borrowing public generally, among which the Plaintiff was included in both categories, to investigate carefully and thoroughly, and otherwise vet and approve their prospective branch managers, including their prior business dealings and relationships before hiring them."  *Id.* ¶ 78.  "[I]t was the continuing duty of [VanDyk] to make certain that [Cobb] and other prospective employees, managers, branch officials, and officers discontinued any prior independent and/or previous outside mortgage loan origination, business, and/or independent lending activities in banking, real estate, and related fields, and after joining [VanDyk] had to work exclusively for and on behalf of VanDyk's banking and/or mortgage operations."  *Id.* ¶ 79.  Plaintiff also alleges that VanDyk owed her a fiduciary duty of care "as a mortgage licensee at both the Federal and State levels."  *Id.* ¶ 104.  Despite the

1    existence of a duty of care, Plaintiff alleges VanDyk "was fully aware of the close connection

2    between Cobb and [Davis] during their employment of Cobb, but chose to overlook that

3    connection because it was in their perceived interest to do so, as it was a means of attracting

4    borrowers." *Id.* ¶ 85. VanDyk thus "encouraged, condoned, and assisted" Cobb's continuing

5    relationship with DM Financial. *Id.* ¶ 82.

6         Plaintiff alleges that VanDyk's "continuing failure to conduct periodic in-depth

7    inspections, or any inspections at all" breached its duty to her by permitting Cobb to engage in

8    prohibited activities such as payment of operating expenses and employee salaries by Cobb's

9    personal business, DM Finance, and Cobb's independent origination of third party mortgages. *Id.*

10   ¶ 94. "[T]he likelihood that Cobb would continue her previously independent business as DM

11   Finance after her hiring by VanDyk was highly foreseeable," since Cobb was required to have an

12   active roster of existing clients to become accepted as a "branch" office of VanDyk. *Id.* ¶ 97.

13   Plaintiff also alleges that since the continued operation of DM Financial was wrongful, it follows

14   that it was also foreseeable by VanDyk "that other illegal activities, such as the conversion by

15   [Cobb and Davis] of DM Financial's investors' money, would also take place." *Id.* Alternatively,

16   had VanDyk investigated Cobb's activities, Plaintiff alleges it would have discovered numerous

17   irregularities in her operation of DM Financial. *Id.* ¶ 98.

18        Plaintiff alleges that as part of their scheme to defraud her, Cobb and Davis forged

19   promissory notes and deeds of trust, which were sent to investors as evidence that the loans had in

20   fact been made. *Id.* ¶ 30. However, beginning in April 2012, payments from Cobb and Davis to

21   Plaintiff became sporadic and then stopped. *Id.* Ultimately, Cobb and her associates were

22   indicted for wire and mail fraud, and identity theft by a federal grand jury. *Id.* ¶ 31.

23   **B.**    **Procedural Background**

24        Plaintiff originally filed this lawsuit in Marin County Superior Court, on July 16, 2013.

25   Not. of Rem., Dkt. No. 1, Ex. A (Compl.). On August 16, 2013, VanDyk removed the action to

26   this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332, 1441(a), and 1446. *Id.*

27        On November 18, 2013, the Court granted VanDyk's motion to dismiss the claim for

28   professional negligence against VanDyk with leave to amend. Order, Dkt. No. 32. On February

United States District Court
Northern District of California

3

9, 2014, Plaintiff filed the FAC, in which she asserts claims against Cobb and Davis for: (1) accounting; (2) breach of fiduciary duty; (3) conversion; (4) common count; and (5) fraud and deceit.  FAC ¶¶ 37-75.  In addition to asserting a claim for professional negligence against VanDyk, Plaintiff also asserts four new claims against VanDyk for: (1) breach of fiduciary duty; (2) violation of Business and Professions Code sections 17200 and 17500; (3) aiding and abetting breach of fiduciary duty; and (4) aiding and abetting fraud.  *Id.* ¶¶ 39-59; 75-146.

On March 11, 2014, Van Dyk filed the instant Motion to Dismiss, seeking to dismiss Plaintiff's claims against it on the grounds that: (1) Plaintiff has not and cannot plead sufficient facts to maintain a negligence claim because she cannot establish that VanDyk owed her a duty of care; (2) the remaining causes of action asserted against VanDyk were improperly added because they exceed the scope of the Court's prior Order granting VanDyk's motion to dismiss; and (3) even if permissibly added, these causes of action are insufficient to state a claim.  Mot. at 1-4, Dkt. No. 54.

Plaintiff filed an untimely Opposition on April 2, 2014.[1]  In the Opposition, Plaintiff elects

---

[1] In the Opposition, Plaintiff requests that the Court take judicial notice of the exhibits attached to the Opposition and also those attached to the FAC.  Opp'n at 8.  Defendant does not object to the request.  Exhibits A-D to the Opposition consist of: (1) the reporting requirements of the NMLS website (Ex. A); (2) the NMLS Policy Guidebook as updated July 23, 2012, taken from the official NMLS website (Ex. B); (3) excerpts from the Nov. 8, 2013 deposition of Anthony Richard Cobb in this case (Ex. C); and (4) various unlabeled emails and loan documents (Ex. D).  Exhibits A and B are matters of public record, provided by a government agency for public review, and accordingly the Court GRANTS the request to take judicial notice of these exhibits pursuant to Federal Rule of Evidence 201.  *See Hansen Beverage Co. v. Innovation Ventures, LLC*, 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23, 2009) (court may take judicial notice of documents made available to the public on government agency websites).  The request for judicial notice of Exhibits C and D is DENIED as moot as the identical documents are attached to the FAC.

Exhibits A -L to the FAC consist of: (1) various emails purporting to show the interchangeable use of DM Financial and VanDyk (Ex. A); (2) May 21, 2000 letter from the U.S. Department of Housing and Urban Development regarding Prohibited Branch Arrangements (Ex. B); (3) text of the Secure and Fair Enforcement for Mortgage Licensing ("S.A.F.E. Act), 12 USC 5101, et seq. (Ex. C); (4) Mortgage Broker Compliance Checklist from a "Mortgage Broker Compliance Evaluation Manual" (Ex. D); (5) screen shots of VanDyk's advertising for branch offices, date unknown (Ex. E); (6) screen shots of VanDyk's active pipeline solicitations, date unknown (Ex. F); (7) excerpts from the November 8, 2013 deposition of Anthony Richard Cobb (Ex. G); (8) a purportedly "false document" and email from Cobb to plaintiff Steve Thieme, case no. 13-cv-3827-MEJ (Ex. H); (9) various documents under the title "Mixing VanDyk with DM Finance" (Ex. I); (10) portions of an unsigned letter dated October 18, 2012 from the Consumer Finance Protection Bureau re:"disciplinary action functionality added to the Nationwide Mortgage Licensing System and Registry" (Ex. J); (11) pertinent selections of the "FHA Title II Mortgage

United States District Court
Northern District of California

United States District Court
Northern District of California

1    to proceed on a single cause of action for negligence, and dismisses the Second, Fifth, Eighth,

2    Seventh, Ninth, and Tenth Causes of Action.  Opp'n at 7.

3                                        **III. LEGAL STANDARD**

4           Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a

5    claim upon which relief may be granted.  A Rule 12(b)(6) motion challenges the sufficiency of a

6    complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face."

7    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a

8    "probability requirement" but mandates "more than a sheer possibility that a defendant has acted

9    unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations

10   omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual

11   allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the

12   non-moving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.

13   2008).  "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of

14   sufficient facts alleged under a cognizable legal theory."  *Johnson v. Riverside Healthcare Sys.*,

15   534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v.*

16   *Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the

17   basis of a dispositive issue of law.").

18          Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only

19   required to make "a short and plain statement of the claim showing that the pleader is entitled to

20   relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of

21   a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

22   "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

23   dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652

24   F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply

25

26   ─────────────────────────────

27   Approval Handbook" dated August 14, 2006 (Ex. K); (12) text of Regulation G (the implementing
     regulation of the S.A.F.E. Mortgage Act), 12 C.F.R. 1007 (Ex. L).  Dkt. No. 50.  The request to
     take judicial notice of these Exhibits is GRANTED.  *See Outdoor Media Group, Inc. v. City of*
28   *Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007) (court may consider exhibits attached to the
     complaint when ruling on a motion to dismiss).

1 | recite the elements of a cause of action, but must contain sufficient allegations of underlying facts

2 | to give fair notice and to enable the opposing party to defend itself effectively").  The court must

3 | be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."

4 | *Iqbal*, 556 U.S. at 663.  "Determining whether a complaint states a plausible claim for relief . . .

5 | [is] a context-specific task that requires the reviewing court to draw on its judicial experience and

6 | common sense."  *Id.* at 679.

7 |       If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

8 | request to amend the pleading was made, unless it determines that the pleading could not possibly

9 | be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

10 | banc) (internal quotation marks and citations omitted).

**IV.  DISCUSSION**

**A.      Sixth Claim: Professional Negligence**

13 |       Plaintiff asserts a single cause of action against VanDyk for negligent supervision, hiring,

14 | and oversight of Cobb.  Compl. ¶¶ 65-91.  The essence of Plaintiff's claim is that VanDyk had a

15 | duty to initially investigate Cobb's fitness to serve as branch manager, and thereafter to

16 | continuously supervise Cobb's activities both as branch manager at VanDyk and as principal of

17 | DM Financial to ensure that they complied with applicable state and federal regulations.  Opp'n at

18 | 9-11.  She alleges that VanDyk's failure to take such actions resulted in the foreseeable loss of the

19 | money she invested in Cobb's bridge loan scheme.  *Id.* at 13.

20 |       Under California law, "[t]he elements of negligence are: (1) defendant's obligation to

21 | conform to a certain standard of conduct for the protection of others against unreasonable risks

22 | (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close

23 | connection between the defendant's conduct and resulting injuries (proximate cause); and (4)

24 | actual loss (damages)."  *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (citing *McGarry v.*

25 | *Sax*, 158 Cal. App. 4th 983, 994 (2008)).  In the employment context, an employer may be held

26 | directly liable for the behavior of an unfit employee where the employer was negligent in the

27 | hiring, training, supervising, or retaining of that employee.  *Delfino v. Agilent Tech., Inc.*, 145 Cal.

28 | App. 4th 790, 815 (2006).  "Negligence liability will be imposed upon the employer if it knew or

United States District Court
Northern District of California

6

1    should have known that hiring the employee created a particular risk or hazard and that particular

2    harm materializes." *Id.* "Liability for negligent supervision and/or retention of an employee is

3    one of direct liability for negligence, not vicarious liability." *Id.*

4          In its prior Order, the Court granted VanDyk's motion to dismiss this cause of action

5    because Plaintiff failed to establish that VanDyk owed her a duty of care.  Order Granting Mot. to

6    Dismiss at 7, Dkt. No. 32.  As discussed below, even with the new allegations, the FAC is again

7    deficient in this regard.

8          California courts apply the seven-factor *Rowland* test to determine whether a duty exists

9    that would support a finding of negligence. *Rowland v. Christian*, 69 Cal.2d 108, 113 (1968)

10    (overruled in part on other grounds).  Specifically, courts examine the following factors to

11    determine whether a duty exists: "(1) the foreseeability of harm to the plaintiff, (2) the degree of

12    certainty that the plaintiff suffered injury, (3) the closeness of the connection between the

13    defendant's conduct and the injury suffered, (4) the moral blame attached to the defendant's

14    conduct, (5) the policy of preventing future harm, (6) the extent of the burden to the defendant and

15    consequences to the community of imposing a duty to exercise care with resulting liability for

16    breach, and (7) the availability, cost, and prevalence of insurance for the risk involved." *Id.*  A

17    finding of no duty must be based on a complete analysis of all of the *Rowland* factors. *Henderson*

18    *v. United States*, 846 F.2d 1233, 1236 (9th Cir. 1988).  "Absent the existence of duty ... there can

19    be no breach and no negligence." *Nichols v. Keller*, 15 Cal. App. 4th 1672, 1683 (1993).

20        1.    <u>Plaintiff Has Not Established that VanDyk Owed Her a Duty of Care</u>

21          VanDyk argues that Plaintiff fails to state a cause of action for negligent hiring or

22    supervision because she cannot establish that VanDyk owed Plaintiff a duty of care for acts

23    stemming from Cobb's independent tortious conduct to a third party.  Mot. at 10-11.  VanDyk also

24    maintains that Plaintiff has not cured any of the flaws in this cause of action that the Court

25    previously identified in the November 18, 2013 Order granting VanDyk's motion to dismiss the

26    original Complaint.  *Id.* at 12-13.

27          Plaintiff counters that VanDyk owed a duty of care to her because it knew that Cobb

28    continued to operate DM Financial during her employment.  Opp'n at 10-11.  Thus, Plaintiff

United States District Court
Northern District of California

7

1   argues, VanDyk had a continuing duty to supervise, inspect and audit Cobb's work at both

2   VanDyk and DM Financial for the protection of its customers.  *Id.*  For the reasons set forth

3   below, the Court disagrees with Plaintiff.

4               *a.       Foreseeability*

5       The most important *Rowland* factor is foreseeability.  *Henderson*, 532 F. Supp. 2d at 1231.

6   In deciding the question of foreseeability in the context of legal duty, a court's task in determining

7   duty "is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of

8   a particular defendant's conduct, but rather to evaluate more generally whether the category of

9   negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that

10  liability may appropriately be imposed on the negligent party." *Jackson v. Ryder Truck Rental,*

11  *Inc.*, 16 Cal. App. 4th 1830, 1839 (1993) (quoting *Ballard v. Uribe*, 41 Cal.3d 564, 573 n. 6

12  (1986)).  An employer's duty to third parties for the actions of its employees is limited.  *See*

13  *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26, 58 (1998).

14      With regard to this factor, Plaintiff has still not alleged that Cobb's conduct was

15  foreseeable to VanDyk.  In the prior Order granting VanDyk's Motion to Dismiss the Complaint,

16  the Court found that Plaintiff failed to allege that: (1) she was a customer or had any direct

17  business dealings with VanDyk[2]; (2) VanDyk knew of Plaintiff, her interaction with Cobb or DM

18  Financial, or her decision to repeatedly invest her money with Cobb and DM Financial; (3) Cobb

19  had previously been involved in impermissible activity such that VanDyk would have been on

20  notice that Cobb presented such a risk to customers; (4) VanDyk was on notice of Cobb's

21  operation of DM Financial such that it failed to take either preventative or disciplinary actions

22  against Cobb.  *See* Order at 5. The Court also found that allegations that (1) Cobb's name and

23  email address using DM Financial were discoverable on the internet; and (2) that Cobb used

24  VanDyk's computers and answered the phone as VanDyk were insufficient to demonstrate that

25  Cobb was engaged in any business that presented a conflict or potential risk to Plaintiff.  *Id.* at 5-6.

26

27  ──────────────────
    [2] In the Opposition, Plaintiff states that she actually received a first mortgage from VanDyk which

28  she still has.  Opp'n at 21.  However, this appears to be an error, as there is no mention in the FAC that Plaintiff was ever a customer of VanDyk.

United States District Court
Northern District of California

United States District Court
Northern District of California

1     Yet, Plaintiff makes no new allegations sufficient to overcome these hurdles.

2         Plaintiff argues that a number of regulations such as the S.A.F.E. Act and the NMLS

3 reporting requirements created a statutory duty of care to monitor Cobb's activities.  Opp'n at 12.[3]

4 Particularly, Plaintiff alleges that Cobb was required to "closely adhere to VanDyk's federally-

5 mandated mortgage lending standards and practices and was subject to and bound by all applicable

6 federal and state rules and regulations governing the mortgage lending industry … including the

7 proscription against maintaining outside business activities in the mortgage lending, real estate,

8 and related fields, of which arranging second mortgage financial was one.  FAC ¶ 86.  Plaintiff

9 refers to Exhibits C, K, and L, which contain the text of the S.A.F.E. Act, its implementing

10 regulation, and sections of the FHA Title II Mortgage Approval Manual.  *Id.*  None of these

11 regulations creates a duty of care to Plaintiff.  First, the SAFE Act and NMLS implemented the

12 creation of a central repository for licensing information, and do not provide any regulation of

13 mortgage lending.  *See, e.g.* 12 C.F.R. § 1007.101(b) ("This part implements the S.A.F.E. Act's

14 Federal registration requirement for mortgage loan originators.").  Second, the purpose of the

15 HUD/FHA rules for branch offices offering FHA loans is to prevent the origination of insured

16 mortgages by lenders that have not received HUD/FHA approval, which increases the risk to the

17 FHA insurance funds and to the public.  *See* May 1, 2000 HUD/FHA Ltr. re: Prohibited Branch

18 Arrangements, Ex. B to FAC, p. 2.  The FHA rules were not promulgated to prevent unscrupulous

19 mortgage brokers from engaging in fraudulent side businesses, and do not set forth a standard of

20 care for the operation of mortgage branch offices.

21         In the same vein, Plaintiff alleges that VanDyk's branch office was an "illegal net branch"

22 under HUD/FHA regulations, and that VanDyk had a fiduciary duty to prevent this situation for

23 Plaintiff's protection.  FAC ¶ 50.  In so arguing, Plaintiff again relies on the FHA Title II

24 Mortgage Approval Handbook (Ex. K to FAC) and the May 1, 2000 HUD letter regarding

25 prohibited branch arrangements (Ex. B to FAC).  None of the prohibited branch operations

26 outlined in these documents are applicable under the current facts alleged.  For instance, Plaintiff

27

28    [3] Plaintiff asserts that "the NMLS forbids" dual roles of Branch manager and outside partner in a related business, but does not provide any authority for this claim.

United States District Court
Northern District of California

alleges that "Cobb was allowed to originate third party mortgages independently." FAC ¶ 94. However, the cited FHA regulations are intended to prohibit approved mortgagees (i.e., VanDyk) from taking on an existing, separate mortgage company or broker (i.e., Cobb) as a branch and allowing that separate entity to originate insured mortgages under the approved mortgagee's HUD Mortgagee Number. *See* Ex. B to FAC, p. 1. Plaintiff does not allege that Cobb originated FHA loans for VanDyk, or that VanDyk's oversight of Cobb's FHA activities, if any, would have prevented the harm she suffered via her investments in DM Financial. The same holds true for Plaintiff's allegation that that "[t[he operating expenses, such as the salary of Tony Cobb, was met in part by [Cobb's] personal account, e.g. DM Finance [sic]." FAC ¶ 94. FHA regulations prohibit a branch from paying any of its own operating expenses. Since Tony Cobb worked in part for DM Financial, it was appropriate for Cobb to pay him for his work from separate funds. *See* Ex. G to FAC ("Tony Cobb Depo.") at 40:8-9. However, even if Cobb was in violation of these two FHA rules, it is highly unlikely that oversight of Cobb's compliance with FHA branch regulations by VanDyk would have prevented third party losses incurred by investing in Cobb's independent bridge loan business.

> b.    *Closeness of Connection Between VanDyk's Conduct and Plaintiff's Injury*

With regard to this factor, Plaintiff again alleges that VanDyk's lack of scrutiny of Cobb's operation of DM Financial between 2007 and 2012 caused Plaintiff's loss of her investments. Opp'n at 13. Although Plaintiff adds some new allegations purporting to establish that VanDyk knew or should have known of her continued operation of DM Financial, the allegations are insufficient to establish a connection between VanDyk's conduct and Plaintiff's injury.

In its previous Order, the Court found that allegations that Cobb was acting outside the scope of her employment and in violation of VanDyk's internal operating rules demonstrated that VanDyk's conduct was not closely connected to Plaintiff's injury. Order at 6. Plaintiff now attempts to assert that Cobb was acting within the scope of her employment with VanDyk by operating DM Financial. FAC ¶¶ 27, 40, 54, 88. Plaintiff alleges that Cobb's acts were a direct part of her scope of employment as a branch manager of VanDyk. *Id.* ¶ 27. However, the supporting allegations demonstrate that only Cobb was aware of the connection: "Cobb orally

1    represented to the Plaintiffs that her second mortgage transactions were within her scope of

2    employment with VanDyk, and would be of benefit to VanDyk," and that Plaintiff invested in DM

3    Financial because she "perceived" that the second mortgage lending investment was part of the

4    scope of Cobb's employment with VanDyk. *Id*. ¶¶ 40, 88.

5         Plaintiff also alleges that VanDyk knew Cobb would continue to operate DM Financial

6    because VanDyk required Cobb to have an active pipeline when she opened her branch offices.

7    *Id*. ¶ 54.  Plaintiff argues that the fact that DM Financial was the source of Cobb's active pipeline

8    establishes VanDyk's knowledge of Cobb's activities.  Opp'n at 17.  However, the fact that

9    VanDyk expected Cobb to bring an active pipeline of leads with her from her previous business

10   does not lead to a plausible inference that VanDyk knew or should have known that Cobb would

11   continue to operate that business once hired.  Accordingly, Plaintiff has still not set forth any

12   allegations indicating that Cobb's act of operating a business engaged in arranging bridge

13   financing was part of her job duties at VanDyk; that VanDyk directed her to engage in that

14   business; or that VanDyk profited from Plaintiff's investment. *See* Order at 6.

15         Further, Plaintiff has still not alleged that she obtained a mortgage from VanDyk or had

16   any kind of business relationship with VanDyk at any point. *Id.*  Her dealings were with Cobb,

17   individually, and exclusively dealt with investing in DM Financial's bridge lending operation. *See*

18   FAC ¶ 26.  As the Court previously explained, "the fact that VanDyk supplied Cobb with an office

19   and computer to carry out her duties as a VanDyk employee [does not] demonstrate any

20   connection between VanDyk and Plaintiff's decision to invest her money with DM Financial."

21   Order at 6-7 (citing *Delfino*, 145 Cal. App. 4th at 816).

22             *c.*     *The Moral Blame Attached to the Defendant's Conduct*

23         Courts have found that this factor favors the imposition of a duty "where the defendant (1)

24   intended or planned the harmful result ...; (2) had actual or constructive knowledge of the harmful

25   consequences of their behavior ...; (3) acted in bad faith or with a reckless indifference to the

26   results of their conduct ...; or (4) engaged in inherently harmful acts...." *Adams v. City of*

27   *Fremont*, 68 Cal. App. 4th 243, 270 (1998).  Plaintiff contends that VanDyk's lack of scrutiny of

28   Cobb's outside activities satisfies this factor.  Opp'n at 13.  However, on this element, Plaintiff

*United States District Court*
*Northern District of California*

11

again lacks any factual support in the FAC.  There are no allegations indicating that VanDyk was on notice of Cobb's operation of DM Financial such that it failed to take either preventative or disciplinary actions against Cobb, or that VanDyk authorized Cobb's conduct.  *See* Order at 7.  Thus, there is no basis to attach moral blame for Plaintiff's loss to VanDyk.

> #### d.    Prevention of Future Harm

Plaintiff fails to address the policy of preventing future harm.  However, as there are no allegations in the FAC indicating that VanDyk was aware of Cobb's activities or knew that she was taking investments from unknown individuals such as Plaintiff, this factor weighs against Plaintiff.   Instead, as Plaintiff acknowledges, Cobb's activities as part of DM Financial were outside the scope of her employment with VanDyk, contravened VanDyk's internal policies, and violated lending regulations.  FAC ¶ 34 ("…as an employee, officer, and branch manager of VANDYK, defendant COBB was not permitted to engage or participate in outside employment… [such as ancillary lending activities]… pursuant to [various lending regulations]…and [*inter alia*] of VANDYK's own internal rules…").

> #### e.    Extent of Burden to Defendant and Consequences to the Community of Imposing a Duty to Exercise Care with Resulting Liability for Breach

With regard to this factor, Plaintiff argues that "the burden on VanDyk to supervise Cobb's activity was minimal."  Opp'n at 13.  The Court disagrees.  Finding that a duty exists between VanDyk and Plaintiff – who had no relationship with VanDyk – would create indeterminate liabilities on the part of VanDyk to an indeterminate number of people for acts outside its employees' scope of employment.  *See Delfino*, 145 Cal. App. 4th at 816 ("It would be a dubious proposition indeed to suggest that a party, simply by virtue of engaging in business, owes a duty to the world for all acts taken by its employee, irrespective of whether those actions were connected with the enterprise in which the business was engaged.").

> #### f.    The Availability, Cost, and Prevalence of Insurance for the Risk Involved

Neither party provides any argument on this factor, although Plaintiff notes that VanDyk maintained insurance coverage.  Opp'n at 14.

2.   Summary

Taking the foregoing *Rowland* factors into consideration, the Court finds that Plaintiff has again failed to set forth allegations demonstrating that VanDyk owed a duty of care to Plaintiff. Plaintiff has not alleged any facts indicating that Plaintiff's injury was foreseeable, that it was connected to the operation of VanDyk's business, or suggesting that VanDyk is morally culpable for Plaintiff's loss.  Finding that a duty exists in this scenario would unreasonably burden VanDyk by forcing it to guard against any conduct by its employees involving any person; rather than conduct that is related to the employee's duties.  Because Plaintiff has not set forth allegations to support the duty element of her negligence claim, the Court once again finds it is subject to dismissal.  The Court therefore GRANTS VanDyk's Motion to Dismiss Plaintiff's claim for professional negligence WITHOUT PREJUDICE.  If Plaintiff chooses to file an amended complaint, Plaintiff must allege additional facts supporting the elements discussed above.

### V.  CONCLUSION

For the foregoing reasons, the FAC as currently pled fails to cure the deficiencies identified in the Court's prior Order.  Accordingly, the Sixth Cause of Action is DISMISSED WITH LEAVE TO AMEND by October 2, 2014.

As Plaintiff elects to proceed on a single cause of action for negligence, and agrees to dismiss the Second, Fifth, Seventh, Eighth, Ninth, and Tenth Causes of Action, those causes of action are DISMISSED WITHOUT PREJUDICE at this time.  The addition of these causes of action exceeded the scope of the Court's prior Order granting Defendant's Motion to Dismiss, which did not grant Plaintiff permission to add new claims.  Accordingly, Plaintiff must obtain leave of Court in the event she seeks to amend her complaint to add these causes of action at a later date.

**IT IS SO ORDERED.**

Dated: September 15, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge

13