UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA CHENAULT,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DIANE M. COBB, et al.,<br><br>　　　　Defendants. | Case No. 13-cv-03828-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 69 |

## INTRODUCTION

Pending before the Court is Defendant VanDyk Mortgage Corporation's ("VanDyk") Motion to Dismiss Plaintiff Cynthia Chenault's ("Plaintiff") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has filed an Opposition (Dkt. No. 70) and VanDyk has filed a Reply (Dkt. No. 72). The Court finds this matter suitable for disposition without oral argument and VACATES the April 16, 2015 hearing. *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court DENIES VanDyk's Motion for the reasons set forth below.

## BACKGROUND

**A.　Factual Background**

Plaintiff lives in Sand Point, Idaho. Second Am. Compl. ("SAC") ¶ 1, Dkt. No. 67. VanDyk provides mortgage and other related services throughout the United States, including various locations in California. *Id.* ¶¶ 2, 5. Plaintiff alleges that VanDyk maintains a business model in which it hires experienced loan originators who had previously been in the business of arranging single family real estate loans, provided they bring with them their active "book of business," including contacts they had previously accumulated, and "a consistent, active pipeline" of sources for loans. *Id.* ¶ 18.

As pled in the SAC, this action centers on Cobb's activities as a "mortgage loan originator." *Id.* ¶ 5. Beginning in 1995, Cobb and her business partner, Defendant Sloane Davis, originated and arranged residential bridge loans under the name DM Financial. *Id.* ¶¶ 4, 6. Cobb found investors willing to fund short-term loans to borrowers at high rates of interest, ostensibly secured by second deeds of trust and promissory notes. *Id.* ¶ 15. Cobb "promised high interest yields of ten to eleven and a half percent, and the return of his or her monetary investment at the end of the short-term loan(s)." *Id.* ¶ 84. As part of this arrangement, investors sent money to Cobb, who then breached her fiduciary duty owed to them "by failing to account for these funds, and/or by defrauding [them], and/or by converting the money entrusted to [Cobb and Davis]." *Id.* ¶ 52. Plaintiff alleges that the deeds of trust and promissory notes were often forged, with the money "diverted to the use and benefit of Defendants Cobb and Davis." *Id.* ¶ 100.

From 2009 to 2012, Cobb was a branch manager for VanDyk Mortgage in its Mill Valley and Larkspur, California and Las Vegas, Nevada offices. *Id.* ¶ 5. Plaintiff alleges that Cobb disclosed DM Financial to VanDyk during the hiring process, and it was her "extensive experience in operating as a mortgage loan administrator with a proven track record that attracted Cobb to Van[D]yk." *Id.* ¶ 21. Plaintiff alleges that the terms of her employment agreement provided that Cobb "would be able to and was encouraged to continue the business of originating second mortgage bridge loans, underwritten by a Van[D]yk salary and/or commission arrangement, although not derive direct profits or points or fees from such origination or servicing activities, thus avoiding potential conflicts of interest with her investor or with Van[D]yk." *Id.* ¶ 19. Plaintiff alleges that arranging bridge financing was "part and parcel" of Cobb's job with VanDyk, but she was expected to pursue those activities under the DM Financial name, with the idea that the bridge loans would lead to approved first mortgage applications with VanDyk. *Id.* ¶ 20.

While employed by VanDyk, Cobb continued doing business as a loan originator, arranger, and servicer for second mortgages under the DM Financial name. *Id.* ¶¶ 8, 10, 12. During that time, Cobb paid her staff to work in the VanDyk offices, commingled the offices, equipment, credit-checking references, and other services of her separate loan activity with those of VanDyk, and engaged in these activities at the same time she was working for VanDyk as branch manager.

2

1  *Id.* ¶ 41.

2  Plaintiff alleges that VanDyk was required to vet Cobb's background and qualifications
3  and exercise close oversight and supervision of all her loan origination activities. *Id.* ¶¶ 23, 25.
4  She maintains that "Van[D]yk, as an integral part of its business model did in fact maintain,
5  approve, condone, substantially encourage, aid, and abet, and ratify the establishment of a
6  prohibited net branch in the offices maintained by Van[D]yk and Cobb in Marin County,
7  California and in Las Vegas, Nevada, commencing in 2008, and continuing thereafter." *Id.* ¶ 40.
8  She further alleges that by condoning DM Financial's bridge loan activities, including the use of
9  the VanDyk name and reputation, VanDyk essentially ratified Cobb's acts and continued to make
10 them part of her scope of employment. *Id.* ¶ 44.

11 Plaintiff alleges that her husband had been an investor with their community assets in DM
12 Financial since 2007, up until his death in 2009. *Id.* ¶ 27. During the period 2007-2012, the
13 Chenaults deposited approximately $200,000-$250,000 with Cobb. *Id.* Based on VanDyk's
14 advertising and her and her husband's own research regarding VanDyk, and their conversations
15 with Cobb, Plaintiff believed VanDyk "was fully aware of and extensively controlled [DM
16 Financial's] secondary mortgage activities," and that DM Financial's identity was "identical and
17 interchangeable with that of Van[D]yk." *Id.* ¶¶ 28-29. She states that she was not aware that "the
18 entire control system of its loans touted by Van[D]yk . . . *did not in reality extend to bridge loan*
19 *activities* such as that conducted by Cobb." *Id.* ¶ 32 (emphasis in original). Plaintiff also alleges
20 that VanDyk owed him a "statutory duty of care" by virtue of mortgage and banking industry
21 regulations:

22
> Van[D]yk's duties of professional care as a mortgage banker/broker/loan originator in the field of mortgage banking were and remain defined by a plethora of Federal statutes including the Dodd-Frank Wall Street Reform and Consumer Protection Act (July 21, 2010); the Housing and Economic Recovery Act of 2008, including the Secure and fajr Enforcement of Mortgage Lending Act (SAFE)12 USC Chapter 51, (July 30, 2008); Truth in Lending Act (TILA) (l5 USC 1602); Real Estate Settlement Procedures Act (RESPA) (12 USC 2607), by the NMLS [National Mortgage License System and Registry]policies, regulations, and rules, and by the written regulations, rules, handbooks, and policies of a number of Federal departments, including Housing and Urban Development (HUD (the Federal Housing Administration (FHA)) and the

3

> Veteran's Administration (VA), the Office of the Comptroller of the Currency, Fannie Mae, Freddie Mac, the Bureau of Consumer Finance Protection Bureau (CFPB), and the Federal Reserve System (including the independent CFPB) but not only limited to these agencies.

*Id.* ¶ 105 (errors in original).

Plaintiff maintains that VanDyk's employment of Cobb gave her side operations an air of legitimacy "under the brand name and aegis of Van[D]yk," and that VanDyk should have "had in place monitoring systems to detect employee conduct" as well as a variety of other supervisory and inspection mechanisms as to Cobb's ancillary scheme. *Id.* ¶¶ 4, 110. She alleges that VanDyk "knew that Cobb was using the name and reputation of Van[D]yk to continue its prior activity of arranging bridge loans in such a way as to enhance the legitimacy of her bridge loan activities, and it also knew that no approval for the use of DM Financial as a[n] alternative name or brand for Van[D]yk had not been approved by the NMLS or the California Commissioner of Corporations." *Id.* ¶ 119.

Ultimately, Cobb was indicted for wire and mail fraud and identity theft by a federal grand jury. *Id.* ¶ 10. Cobb resigned as a branch manager for VanDyk and gave up her license as a loan originator effective January 1, 2013. *Id.* ¶¶ 9, 11.

**B.      Procedural Background**

Plaintiff originally filed this lawsuit in Marin County Superior Court, on July 16, 2013. Not. of Rem., Dkt. No. 1, Ex. A. She asserted two causes of action against VanDyk: Negligent Supervision and Oversight, and Respondeat Superior. *Id.* On August 16, 2013, VanDyk removed the action to this Court based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441(a), and 1446. Not of Rem. at 1.

On November 18, 2013, the Court granted VanDyk's motion to dismiss with leave to amend. Dkt. No. 32. As to Plaintiff's negligent supervision claim, the Court found that Plaintiff failed to set forth allegations demonstrating that VanDyk owed a duty of care to Plaintiff. *Id.* at 8. Specifically, the Court found that Plaintiff failed to allege that: (1) she was a customer or had any direct business dealings with VanDyk; (2) VanDyk knew of Plaintiff, her interaction with Cobb or DM Financial, or her decision to repeatedly invest her money with Cobb and DM Financial; (3)

Cobb had previously been involved in impermissible activity such that VanDyk would have been on notice that Cobb presented such a risk to customers; or (4) VanDyk was on notice of Cobb's operation of DM Financial such that it failed to take either preventative or disciplinary actions against Cobb. *Id.* at 5-6. However, the Court granted leave to amend, noting that it may be possible for Plaintiff to allege additional facts supporting liability. *Id.* at 8. The Court dismissed the respondeat superior claim with prejudice, finding that respondeat superior is a theory of liability, not a cause of action. *Id.*

On February 9, 2014, Plaintiff filed a First Amended Complaint, in which she asserted five claims against Cobb and Davis, and five causes of action against VanDyk. First Am. Compl., Dkt. No. 35. In addition to her claim for professional negligence against VanDyk, Plaintiff also asserted four new claims against VanDyk for: (1) breach of fiduciary duty; (2) violation of Business and Professions Code sections 17200 and 17500; (3) aiding and abetting breach of fiduciary duty; and (4) aiding and abetting fraud. *Id*. ¶¶ 39-59; 74-132. On September 15, 2014, the Court granted VanDyk's motion to dismiss, with leave to amend as to the negligence claim only. Dkt. No. 62. The Court found that Plaintiff again failed to set forth allegations demonstrating that VanDyk owed her a duty of care: "Plaintiff has not alleged any facts indicating that Plaintiff's injury was foreseeable, that it was connected to the operation of VanDyk's business, or suggesting that VanDyk is morally culpable for Plaintiff's loss." *Id.* at 13.

On February 19, 2015, Plaintiff filed her SAC alleging six causes of action against Cobb and Davis, and one cause of action against VanDyk: Professional Negligence based on Negligent Hiring, Supervision, Retention, Reporting, and Oversight. SAC ¶¶ 104-30. VanDyk now moves to dismiss Plaintiff's claim against it on the grounds that: (1) VanDyk owed no duty to Plaintiff for its employees' relations with third parties; (2) mortgage industry regulations do not impose a statutory standard of care; and (3) as one of Cobb's employers, VanDyk incurred no negligence liability related to her DM Financial activity. Mot. at 7-11.

**LEGAL STANDARD**

Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a

5

complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

6

1   banc) (internal quotations and citations omitted).  However, the Court may deny leave to amend
2   for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the
3   movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice
4   to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."
5   *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v.
6   Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

According to Plaintiff, the essence of her claim is that VanDyk had a duty to initially investigate Cobb's fitness to serve as branch manager, and thereafter to continuously supervise Cobb's activities both as branch manager at VanDyk and as principal of DM Financial.  Opp'n at 8-9.  VanDyk argues that Plaintiff fails to allege that he had any direct dealings with VanDyk as to her investments in DM Financial, but instead was a private investor in Cobb's independent side business.  Mot. at 9.  VanDyk maintains that, "[a]lthough both VanDyk and DM Financial were generally in the same business of coordinating real estate loans, the similarities end there; Plaintiff's SAC remains as silent as her prior pleadings as to how her alleged harm could have possibly arisen out of Cobb's employment with VanDyk."  *Id.*  And, as Plaintiff has therefore not pled a viable claim of ordinary negligence, VanDyk argues that her negligence theory based on regulatory violations must also fail because "the variety of . . . statutes referenced in the SAC have no bearing on VanDyk's liability to the third party Plaintiff here."  *Id.* at 10.  Finally, VanDyk contends that Plaintiff "does not point to any reason as to how VanDyk was put on notice of DM Financial's allegedly criminal scheme, or owed a duty to Plaintiff to somehow discover that the scheme existed."  *Id.* at 11-12.

Plaintiff counters that VanDyk owed her a duty of care because it knew that Cobb continued to operate DM Financial during her employment, and VanDyk and DM Financial were "identical and interchangeable."  Opp'n at 8-9.  Thus, Plaintiff argues, VanDyk had a continuing duty to supervise and to inspect and audit Cobb's work at both VanDyk and DM Financial for the protection of its customers.  *Id.*

Under California law, "[t]he elements of negligence are: (1) defendant's obligation to

1  conform to a certain standard of conduct for the protection of others against unreasonable risks
2  (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close
3  connection between the defendant's conduct and resulting injuries (proximate cause); and (4)
4  actual loss (damages)." *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (citing *McGarry v.*
5  *Sax*, 158 Cal. App. 4th 983, 994 (2008)). "The threshold element of a cause of action for
6  negligence is the existence of a duty to use due care toward an interest of another that enjoys legal
7  protection against unintentional invasion." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th
8  26, 57 (1998), *as modified* (Sept. 23, 1998) (internal quotations and citations omitted). "Whether
9  this essential prerequisite to a negligence cause of action has been satisfied in a particular case is a
10 question of law to be resolved by the court." *Id.* (citation omitted).

11      In the employment context, an employer may be held directly liable for the behavior of an
12 unfit employee where the employer was negligent in the hiring, training, supervising, or retaining
13 of that employee. *Delfino v. Agilent Tech., Inc.*, 145 Cal. App. 4th 790, 815 (2006). "Negligence
14 liability will be imposed upon the employer if it knew or should have known that hiring the
15 employee created a particular risk or hazard and that particular harm materializes." *Id.* "Liability
16 for negligent supervision and/or retention of an employee is one of direct liability for negligence,
17 not vicarious liability." *Id.* However, an employer's duty to third parties for the actions of its
18 employees is limited. *See Quelimane*, 19 Cal. 4th at 58. As the California Supreme Court has
19 recognized, "a duty to manage business affairs so as to prevent purely economic loss to third
20 parties in their financial transactions is the exception, not the rule, in negligence law." *Id.* Thus,
21 California courts have established a rule against potentially unlimited liability for economically
22 destructive acts of a representative of an entity to third parties; instead, "[a]s a matter of economic
23 and social policy, third parties should be encouraged to rely on their own prudence, diligence, and
24 contracting power, as well as other informational tools." *Bily v. Arthur Young & Co.*, 3 Cal. 4th
25 370, 403 (1992).

26      Having carefully reviewed Plaintiff's SAC, the Court finds that she has alleged sufficient
27 facts to state a cause of action. Plaintiff alleges that: (1) Cobb disclosed DM Financial to VanDyk
28 during the hiring process (SAC ¶ 21); (2) VanDyk hired Cobb with the understanding that she

United States District Court
Northern District of California

would bring her "book of business" and continue her DM Financial activities (*id.* ¶ 18); (3) the terms of their employment agreement provided that Cobb "would be able to and was encouraged to continue the business of originating second mortgage bridge loans, underwritten by a Van[D]yk salary and/or commission arrangement" (*id.* ¶ 19); (4) VanDyk and DM Financial were "identical and interchangeable" (*id.* ¶ 29); (5) arranging bridge financing was "part and parcel" of Cobb's job with VanDyk, and VanDyk expected her to pursue those activities under the DM Financial name (*id.* ¶ 20); and (6) during her time at as branch manager at VanDyk, Cobb paid her staff to work in the VanDyk offices, commingled the offices, equipment, credit-checking references, and other services of her separate loan activity with those of VanDyk (*id.* ¶¶ 25, 41). Plaintiff also alleges that VanDyk was required to vet Cobb's background and qualifications and exercise close oversight and supervision of all her loan origination activities, and that by condoning DM Financial's bridge loan activities, VanDyk essentially ratified Cobb's acts and continued to make them part of her scope of employment. *Id.* ¶¶ 23, 25, 44.

The Court finds that these allegations are not the type that would open VanDyk to unlimited liability, but are instead specifically targeted at Cobb's actions that she undertook while acting as VanDyk's employee. Taken as true, the Court finds that VanDyk's negligent conduct in the hiring and supervision of Cobb could be sufficiently likely to result in the kind of harm Plaintiff alleges. *Jackson v. Ryder Truck Rental, Inc.*, 16 Cal. App. 4th 1830, 1839 (1993) (quoting *Ballard v. Uribe*, 41 Cal. 3d 564, 573 n.6 (1986)) (in deciding the question of foreseeability in the context of legal duty, a court's task in determining duty "is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.").

In its Motion, VanDyk cites *Delfino*, 145 Cal. App. 4th at 816, in support of the argument that it had no duty to Plaintiff because it had no business relationship with her. Mot. at 8-9. In *Delfino*, an employee of the defendant corporation made a variety of cyber-threats to the third party plaintiffs, who then sued the employer under a negligent supervision theory. *Delfino*, 145

Cal. App. 4th at 795-97.  The court rejected the third parties' arguments for a number of reasons, including that the employer owed no legal duty to the third parties.  *Id.* at 815-17.  In so holding, the *Delfino* court noted that the third parties "had no business relationship" with the employer and that the cyber-threats did not "ar[i]se out of, or were in any way connected with [the employee's] employment."  *Id.* at 816.  The court stated that "[a]t most," the employer had supplied the employee with "an office computer by which its employee (unbeknownst to [the employer]) accessed his personal Internet account" and caused the third parties' injuries.  *Id.*  The *Delfino* court recognized the limited duties that California law imposes on employers to the acts of their employees affecting third parties: "It would be a dubious proposition indeed to suggest that a party, simply by virtue of engaging in business, owes a duty to the world for all acts taken by its employee irrespective of whether those actions were connected with the enterprise in which the business was engaged."  *Id.*

Given Plaintiff's allegations here, the Court finds *Delfino* distinguishable.  While the employee in that case used the defendant's computer to make unrelated cyber-threats, Cobb's actions took place within the context of mortgage banking and loan origination, the business for which VanDyk hired her.  Further, VanDyk did more than supply Cobb with a computer—as alleged, it hired Cobb with the understanding that she would continue her DM Financial bridge loan activities, and she was expected to pursue those activities under the DM Financial name.  Plaintiff also alleges that VanDyk failed to exercise oversight of her loan origination activities, thus essentially ratifying Cobb's acts by failing to take preventative or disciplinary action.  While a jury may ultimately disagree with these allegations, at this stage in the litigation, Plaintiff has stated a claim upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, VanDyk's Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: March 31, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge